UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IAN LEACH,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF TACOMA et al.,<br><br>          Defendant. | CASE NO. 3:24-cv-05055-DGE<br><br>ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) |

### I     INTRODUCTION

Before the Court are Plaintiff's objections (Dkt. No. 65) to the Report and Recommendation ("R&R") (Dkt. No. 64) of United States Magistrate Judge Michelle L. Peterson, which recommends granting Defendants' motion for summary judgment.[1]  (Dkt. No. 48.)  Plaintiff opposed the motion.  (Dkt. No. 53.)  Defendants' reply in support of their motion

---

[1] Plaintiff requests oral argument on his objections.  (Dkt. No. 65 at 1.)  Pursuant to Local Civil Rule 7(b)(4), the Court concludes oral argument is unnecessary for resolution of the summary judgment motion.

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 1

for summary judgment included a motion to strike.[2] (Dkt. No. 59.) For the reasons that follow, the Court ADOPTS the R&R in full and STRIKES Plaintiff's expert report.

## II  BACKGROUND

The Court refers to Judge Peterson's R&R for a more comprehensive recitation of the facts, which the Court adopts here. (Dkt. No. 64 at 2–9.) To summarize, on the evening of January 23, 2021, Officer Khanh Phan responded to multiple 911 calls reporting that the intersection of South 9th Street and Pacific Avenue in Tacoma, Washington "had been overtaken by street racing activity." (Dkt. No. 50 at 1.) He stated that since the summer of 2020, such street takeovers had become more prevalent, and some racing groups had grown "dramatically more brazen, defiant, and violent toward the police officers who respond." (Dkt. No. 56-2 at 2.) Officer Phan approached the intersection in his "fully marked" police patrol vehicle with his emergency lights and air horn activated. (Dkt. No. 50 at 2.) He was carrying a "department issued Glock 19 handgun" and had inside his vehicle "a department issued AR-15 rifle." (*Id.*) His intent was to disperse the crowd. (*Id.*)

However, as he neared the intersection, the crowd "suddenly and without warning" turned and advanced toward him. (*Id.* at 3.) According to Officer Phan, the crowd was "angry, hostile, and violent," and abruptly surrounded his vehicle and "began punching kicking and rocking the vehicle" while screaming profanities. (*Id.*) People punched his windows so hard he thought they would break, and someone threw a glass bottle full of liquid at the driver's side door, which Officer Phan believed could be a Molotov cocktail. (*Id.*) He feared for his own

---

[2] Pursuant to Local Civil Rule 7(g), "[r]equests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will be considered with the underlying motion."

safety, but also feared the crowd would breach his vehicle, overpower him, and gain control of the two weapons inside the vehicle. (*Id.* at 4.)

Officer Phan attempted to back up to retreat from the scene, but his view was "completely obstructed" by both the people surrounding his vehicle and the smoke from the street racing vehicles. (*Id.*; *see also* Dkt. No. 56-2 at 3–4.) When he saw a "small parting of the crowd" in front of him, caused by "male subjects attempt[ing] to climb onto the hood," he made the "split-second" decision to drive forward. (Dkt. Nos. 50 at 4; 56-2 at 4.) He stated that he "slightly accelerated" the car, but as he drove forward, he realized he had hit "one or more of the subjects." (Dkt. No. 56-2 at 4.) After reaching a safe location, he inspected his vehicle and found damage to the driver's door and hood, dents on both sides of the vehicle, and hand and shoe prints all over the vehicle.[3] (Dkt. No. 50 at 5; *see also* Dkt. No. 51 at 27–28.)

Plaintiff testified he was at Dorky's Arcade in downtown Tacoma when he heard tires screeching, people yelling, and loud vehicles. (Dkt. Nos. 49 at 110; 55 at 1.) After he left the arcade, he saw "[a] bunch of cars in the intersection doing donuts and people swarming the cop car." (Dkt. No. 49 at 111.) Plaintiff testified he was about 30 feet from Officer Phan's patrol vehicle when "[e]verybody started swarming it." (*Id.* at 116.) He agreed that the crowd was "pretty violent" and "out of control." (*Id.* at 119.) Plaintiff entered the roadway to record "[a]ll the people swarming the cop car." (*Id.* at 117.) Plaintiff testified that people quickly gathered around the vehicle, and by the time it began driving in reverse, at least 40 individuals were near it. (*Id.* at 120–121.) The vehicle was in the roadway with its lights activated before Officer Phan reversed "[l]ike two feet" and "put it in gear and floored it," going "[f]ive to ten" miles per

---

[3] The record includes two videos of the incident which largely track with Officer Phan's description of the scene. (Dkt. Nos. 49-4, 49-5.)

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 3

1   hour." (*Id.* at 121–122.)  Plaintiff testified he was about five to six feet in front of the vehicle
2   when it started moving forward, and his right leg was struck by the front passenger headlight.
3   (*Id.* at 122.)

4         The Pierce County Force Investigation Team ("PCFIT") conducted an independent
5   investigation into the incident as is required by law.  (*Id.* at 130–141); *see also* Wash. Rev. Code
6   § 10.114.011.  PCFIT concluded there was "overwhelming evidence" of a concerted effort by the
7   crowd to "swarm, impede, block, and damage" Officer Phan's vehicle.  (*Id.* at 139.)  Further,
8   Officer Phan's belief he was in actual danger was "amply supported by the evidence."  (*Id.*)
9   PCFIT concluded that given the circumstances, Officer Phan had no "reasonably effective"
10  alternative, and his actions were "reasonable and necessary to protect himself from death or
11  injury and to remove himself from imminent danger."  (*Id.* at 140–41.)  Both parties retained
12  expert witnesses to review the PCFIT investigative report and other evidence.  (Dkt. Nos. 49 at
13  6–106; 54-1 at 2–18.)

14        Plaintiff filed this lawsuit on January 18, 2024, and amended his complaint on January
15  19, 2024.  (Dkt. Nos. 1, 3.)  He brings claims of (1) Fourth Amendment excessive force against
16  Officer Phan under 42 U.S.C. § 1983; (2) Fourteenth Amendment excessive force against Officer
17  Phan under 42 U.S.C. § 1983; (3) *Monell* liability against the city of Tacoma under 42 U.S.C.
18  § 1983; (4) negligence against all Defendants; (5) negligent infliction of emotional distress
19  against all Defendants; and (6) intentional infliction of emotional distress against all Defendants.
20  (Dkt. No. 3 at 7–10.)  Defendants moved for summary judgment on all claims.  (Dkt. No. 48.)
21  Plaintiff opposed the motion.  (Dkt. No. 53.)  In their reply, Defendants moved to strike
22  Plaintiff's expert report.  (Dkt. No. 59.)

23

24

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 4

On September 4, 2025, Judge Peterson issued an R&R, recommending Defendants' motion for summary judgment be granted in full. (Dkt. No. 64.) Plaintiff filed objections to the recommendations that: (1) Officer Phan is entitled to qualified immunity on the § 1983 claims under the Fourth and Fourteenth Amendments, (2) the public duty doctrine bars a negligence claim against Officer Phan, and (3) Professor Gilbertson's expert report should be stricken. (Dkt. No. 65 at 1–2.) Defendants responded in support of the R&R. (Dkt. No. 66.)

### III   STANDARD OF REVIEW

#### A. Review of R&Rs

A district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which [an] objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

Objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2). "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021). "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).

### B. Motion for Summary Judgment

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249 (1986); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—in most civil cases, a preponderance of the evidence. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. *See T.W. Elec. Serv. Inc.*, 809 F.2d at 630–631. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *Id.* at 630 (relying on

1  *Anderson*).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing

2  facts" will not be "presumed."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–889 (1990).

3                  **IV**    **DISCUSSION**

4      **A. Motion to Strike Expert Report of Professor Gilbertson**

5          Judge Peterson recommends granting Defendants' motion to strike Professor Gilbert's

6  expert report.  (Dkt. No. 64 at 17.)  Plaintiff does not identify any particular aspect of Judge

7  Peterson's analysis he objects to.  (Dkt. No. 65 at 13–14.)  Instead, he generally objects "to the

8  RR finding that Gilbertson expert report lacks foundation and must be wholly struck because it is

9  speculative."[4]  (*Id.* at 13.)  *See Brown v. Papa Murphy's Holdings Inc.*, 2021 WL 1574446, at *3

10  (W.D. Wash. April 22, 2021) ("objections to an R&R are not a vehicle to relitigate the same

11  arguments carefully considered and rejected by the Magistrate Judge").  Because Plaintiff makes

12  no specific objection, the Court must only determine that there is no "clear error" on the face of

13  the record.  *Venson*, 2019 WL 1531271, at *1.  Having reviewed the R&R, Plaintiff's objections,

14  and the underlying record *de novo*, the Court concludes there is no clear error, and adopts Judge

15  Peterson's recommendation.  The expert report of Professor Gilbertson is therefore STRICKEN.

16      **B. Motion for Summary Judgment**

17          Judge Peterson recommends granting Defendants' motion for summary judgment.  (Dkt.

18  No. 64 at 25.)  The Court reviews *de novo* the R&R's analysis of Plaintiff's (1) Fourth

19  Amendment excessive force claim, (2) Fourteenth Amendment excessive force claim, and (3)

20

---

[4] Plaintiff also objects to the R&R's statement that "[a]part from a single reference to Officer Phan's Statement, Professor Gilbertson's Report constitutes the only source of factual citations in Mr. Leach's substantive opposition." (Dkt. No. 65 at 14.)  This argument does not relate to whether Judge Peterson correctly struck Professor Gilbertson's expert report and instead appears to attack Judge Peterson's statement that Plaintiff "seeks to create a battle of the experts while abdicating his responsibility to submit sufficient *factual* evidence to establish a triable issue of fact on each element of his claims." (*See* Dkt. No. 64 at 13) (emphasis in original).

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 7

negligence claim against Officer Phan. The Court agrees Defendants are entitled to summary judgment on all claims.

1. 28 U.S.C. § 1983: Fourth Amendment Excessive Force

Judge Peterson concluded Officer Phan was entitled to qualified immunity because he did not seize Plaintiff within the meaning of the Fourth Amendment. (Dkt. No. 64 at 19.) Plaintiff proposes that the analysis should first look at whether the amount of force used by Officer Phan was objectively reasonable under the circumstances and argues in this case it was not. (Dkt. No. 65 at 3–4.)

The Supreme Court has held that the "operative question" in a Fourth Amendment excessive force case is whether "the totality of the circumstances justifie[s] a particular sort of search or seizure." *Cnty. of L.A., Cal. v. Mendez*, 581 U.S. 420, 427–428 (2017) (alteration in original) (citation omitted). If an officer carries out a seizure that is reasonable, accounting for all relevant circumstances, "there is no valid excessive force claim." *Id*. at 428. Thus, whether Plaintiff's Fourth Amendment claim can survive summary judgment depends on whether he was seized.

The "application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres v. Madrid*, 592 U.S. 306, 325 (2021). However, not every instance of physical contact between an officer and a member of the public becomes a Fourth Amendment seizure. *Id.* at 317. "A seizure requires the use of force *with intent to restrain*." *Id.*; *see also Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (a Fourth Amendment seizure occurs when there is a "governmental termination of freedom of movement *through means intentionally applied*"). Force "intentionally applied for some other

purpose" also does not qualify as a seizure; "we consider only force used to apprehend." *Torres*, 592 U.S. at 317.

Judge Peterson concluded Officer Phan did not act with the intent to restrain Plaintiff, and therefore there was no seizure under the Fourth Amendment. (Dkt. No. 64 at 18–19.) In his objections to the R&R, Plaintiff argues that because he was struck by Officer Phan's vehicle, he was seized, regardless of the officer's subjective intent. (Dkt. No. 65 at 4.) This is true—the appropriate inquiry is "whether the challenged conduct *objectively* manifests an intent to restrain," independent of the officer's "subjective motivations." *Torres*, 592 U.S. at 317; *see also Puente v. City of Phx.*, 123 F.4th 1035, 1052 (9th Cir. 2024) ("the requisite intent to restrain is present only when the force applied objectively aims at detaining or confining the person"). But the evidence indicates Officer Phan's conduct does not "objectively manifest an intent to restrain" Plaintiff or anyone else, and instead shows an intent to escape the crowd.[5] The record shows he was surrounded from all sides and his lights and air horn had so far been ineffective at dispersing anyone. (Dkt. Nos. 49 at 140; 56-2 at 3.) He was concerned about individuals breaching his vehicle and accessing the weapons inside. (Dkt. No. 50 at 4.) Someone threw a glass bottle of liquid he believed to be a Molotov cocktail at his window; he was aware of recent instances where Molotov cocktails were used against police, and he believed the crowd was going to set his vehicle on fire. (*Id.* at 3; *see also* Dkt. Nos. 49 at 139; 56-2 at 3.) He stated his "only option" to escape to safety was to go "forward through the mob." (Dkt. No. 56-2 at 3–4.)

---

[5] The Ninth Circuit's decision in *Puente* is useful here. In that case, the court concluded that chemical irritants used to disperse a crowd (which included the plaintiffs) were objectively aimed at moving the protesters out of the area, but the conduct did not constitute a seizure. 123 F.4th at 1052–1053. This is because the plaintiffs produced no evidence the chemicals were deployed with the objective intent to restrain, for example, "by targeting an immobilizing level of force at *selected individuals*." *Id.* at 1053 (emphasis added). Similarly, there is no evidence here that Officer Phan's conduct was directed at Plaintiff or anyone else.

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 9

Taken as a whole, the record shows that although Officer Phan intentionally applied force, he did so for "some other purpose"—namely, to flee the crowd. *Torres*, 592 U.S. at 317. Plaintiff provides no evidence to the contrary.

Citing *Torres*, Plaintiff argues that the "amount of force remains pertinent in assessing the objective intent to restrain." (Dkt. No. 65 at 7 (citing *Torres*, 592 U.S. at 317).) Therefore, according to Plaintiff, because Officer Phan did more than a "tap on the shoulder" (i.e., he "rammed his squad car into Plaintiff"), the evidence would allow a jury to find an objective intent to strike Plaintiff. (*Id.*) But while the amount of force may be "pertinent," the inquiry remains whether the challenged conduct, assessed in context, demonstrated an objective intent to restrain, because only force used to apprehend is considered. Here, the evidence shows Officer Phan was secured in his patrol vehicle, which was surrounded by people yelling profanities and kicking and hitting the vehicle. (Dkt. Nos. 49 at 132–134; 56-2 at 3.) He stated he was unable to back up because of the crowd surrounding him, and he did not want the crowd to "breach the interior of my vehicle, overpower me, and gain control of the weapons inside – using my weapons against me or the crowd." (Dkt. No. 50 at 4; *see also* Dkt. No. 56-2 at 3.) Defendants' expert noted the only thing separating Officer Phan from the crowd was the patrol vehicle itself. (Dkt. No. 49 at 45.) Though the amount of force used by Officer Phan is one of many relevant factors, when looked at in context, the only conclusion is that the force Officer Phan used was not to apprehend Plaintiff or any other individual at the scene.

Because she concluded there was no seizure, Judge Peterson did not reach the question of whether Officer Phan's actions were objectively reasonable within the circumstances.[6] (Dkt. No.

---

[6] When a police officer's "application of force" involves a seizure of a person, courts must then evaluate "whether that force was excessive under the Fourth Amendment's "'objective

64 at 19 n.11.)  Plaintiff objects to the threshold inquiry and argues that Judge Peterson should have applied the objectively reasonable officer test from the outset.  (Dkt. No. 65 at 3–4.)  The Court agrees with Judge Peterson's conclusion that because there was no seizure, there is no need to analyze whether Officer Phan's actions were reasonable.  *See Lum v. City of Grants Pass,* 2011 WL 915385, *13–14 (D. Or. Jan. 6), *adopted by* 2011 WL 867691 (D. Or. Mar. 10, 2011), *aff'd* 484 Fed. Appx. 89 (9th Cir. 2012) (citation omitted) (noting that whether there is a seizure within the meaning of the Fourth Amendment is a "threshold" matter for both unreasonable seizure and excessive force claims).  Accordingly, the Court concurs that Officer Phan is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.  Plaintiff's Fourth Amendment claim is DISMISSED.

        2.    **28 U.S.C. § 1983: Fourteenth Amendment Excessive Force**[7]

Judge Peterson concluded the "purpose to harm" test applies, and Plaintiff failed to satisfy the requisite standard.  (Dkt. No. 64 at 19–20.)  Plaintiff objects to the use of the "purpose to harm" test and argues that that the "deliberate indifference" standard applies instead.  (Dkt. No. 65 at 10.)

Under the Fourteenth Amendment due process clause, liability is found only if the plaintiff can show that police conduct "shocks the conscience."  *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847 (1998).  There are two tests used to decide whether officers' conduct shocks the conscience, and which test applies turns on whether the officers had time to deliberate their

---

reasonableness'" standard."  *Puente,* 123 F.4th at 1050 (citing *Graham v. Connor,* 490 U.S. 386, 388 (1989)).

[7] Where no seizure has occurred in an excessive force claim, the claim falls outside the Fourth Amendment and its reasonableness standard, and instead comes within the ambit of the substantive due process component of the Fourteenth Amendment.  *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 844, 846–847 (1998).

conduct. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). The "deliberate indifference" test applies if the situation at issue "evolve[d] in a time frame that permits the officer to deliberate before acting." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Deliberation is not possible if the officers "encounter[ed] fast paced circumstances presenting competing public safety obligations." *Id.* at 1139. Deliberation in this context "should not be interpreted in the narrow, technical sense." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

On the other hand, the "purpose to harm" test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Porter*, 546 F.3d at 1137. This test "requires a more demanding showing that [the officer] acted with *a purpose to harm* [the plaintiff] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives include, among others, "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Illegitimate objectives include "when the officer 'had any ulterior motives for using force against' the suspect, such as 'to bully a suspect or get even,' or when an officer uses force against a clearly harmless or subdued suspect." *Id.* (citations omitted).

Here, the undisputed evidence establishes that Officer Phan faced a quickly evolving situation in deciding to flee the crowd. Officer Phan was surrounded by an "angry, hostile, and violent" crowd of people who were "punching, kicking, and rocking [his vehicle] while screaming" profanities at him. (Dkt No. 50 at 3.) He was unable to see out of his rearview mirror because of the amount of people and tire smoke obstructed his view. (*Id.* at 4.) He feared the crowd would breach his vehicle, overpower him, and gain control of the two weapons inside his vehicle, using the weapons either against him or the crowd. (*Id.*) After people began

climbing on the hood of his vehicle, Officer Phan saw a "small parting" in the crowd and made the "split-second" decision to drive forward." (*Id.*)  The R&R states the "Main Video" of the incident lasted just 44 seconds (Dkt. No. 64 at 15, n.7), and in his response to the summary judgment motion, Plaintiff described the video as showing that "[Officer] Phan drove in reverse for at least five (5) seconds, he paused for four (4) seconds and shifted into drive." (Dkt. No. 53 at 6.)  In this short duration of time, deliberation was not practical.  *See Porter*, 546 F.3d at 1139 (finding actual deliberation not practical where a five-minute altercation between officers and the victim evolved quickly and forced the officers to make "repeated split-second decisions"); *see also Chavez v. Las Vegas Metro. Police Dep't*, 648 Fed. App'x 657, 658 (9th Cir. 2016) ("The district court correctly held that because the officers encountered a 'rapidly escalating' situation that quickly evolved within minutes, Chavez was required to show that the officers acted with a 'purpose to harm' unrelated to legitimate law enforcement objectives."); *Shirar v. Guerrero*, 673 Fed. App'x 673, 675 (9th Cir. 2016) ("The purpose-to-harm standard applies here because only a minute elapsed between [the defendant's] call for an ambulance for [the plaintiff] and his second radio call that shots had been fired."); *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1208 (E.D. Cal. 2011) (applying purpose to harm standard where "the entire incident lasted only a few minutes").  Because the evidence indicates Officer Phan acted with the "legitimate objective" of protecting himself and leaving the escalating situation, the Court finds that the "purpose to harm" standard is appropriate in this case.  *Foster*, 908 F.3d at 1211.

Plaintiff objects that even under this standard, his claim should survive summary judgment because Officer Phan "engaged in a collective form of punishment because he was frustrated, angry, overworked, and mad that he could not clear the intersection." (Dkt. No. 65 at

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 13

10–11.) However, Plaintiff has alleged no facts to support this assertion. Furthermore, video footage of the incident contradicts this account.

Accordingly, the Court finds and concludes, just as Judge Peterson did, that Officer Phan is entitled to qualified immunity and Plaintiff's Fourteenth Amendment claim of excessive force should be DISMISSED on summary judgment.

### 3. Negligence

Judge Peterson concluded that the public duty doctrine barred Plaintiff's negligence claim against Officer Phan.[8] (Dkt. No. 64 at 24.)

Governmental entities "shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation." Wash. Rev. Code § 4.96.010(1). To be held liable, a governmental entity must engage in tortious conduct that is "'analogous, in some degree at least, to the chargeable misconduct and liability of a private person or corporation.'" *Munich v. Skagit Emergency Commc'ns Ctr.*, 288 P.3d 328, 336 (Wash. 2012) (Chambers, J., concurring) (quoting *Evangelical United Brethren Church v. State*, 407 P.2d 440 (Wash. 1965)).[9] The requirement of analogous conduct reduces the scope of liability because governments have a variety of duties mandated by statute or ordinance that private individuals do not. For example, private entities are not required by law to issue permits, conduct inspections, prepare official reports, or maintain the peace, and therefore incur no

---

[8] Defendants argued in their motion for summary judgment that Plaintiff's negligence claim fails because "the foundation of his claim is that Officer Pham committed an *intentional* tort." (Dkt. No. 48 at 28.) However, this argument is foreclosed by *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 613 (Wash. 2019) (en banc), which held that a valid intentional tort claim for excessive force "has no bearing on the viability" of a negligence claim.

[9] In several subsequent decisions, the Washington Supreme Court has recognized Justice Chambers's concurrence in *Munich*, which expressed the views of five justices, as precedential. *See Norg v. City of Seattle*, 522 P.3d 580, 584 (Wash. 2023) (en banc).

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 14

liability in connection with these types of activities. *Munich*, 288 P.3d at 337 (Chambers, J., concurring). These special governmental obligations reflect an obligation owed to the public as a whole and are not actionable duties within the meaning of tort law. *See id.* Thus, to establish a duty against a governmental entity, "a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 614 (Wash. 2019) (en banc). There are four exceptions to the public duty doctrine in which the governmental agency acquires a special duty of care owed to a particular plaintiff: (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. *Munich*, 228 P.3d at 332.

Here, Officer Phan was responding to 911 calls of an intersection being overtaken by street racing activity (*see generally* Dkt. No. 50), which is a criminal offense, *see* Wash. Rev. Code § 46.61.530. Enforcing compliance with state law is an exclusive governmental function. *See Fabre v. Town of Ruston*, 321 P.3d 1208, 1213 (Wash. Ct. App. 2014) ("Governmental functions tend to involve activities ensuring compliance with state law; issuing permits; or performing activities for the public health, safety, and welfare."). Thus, because Officer Phan was performing a governmental function when the incident occurred, the public duty doctrine applies.

In *Washburn*, a Federal Way police officer served an antiharassment order on a woman's partner at her request under former Washington Revised Code § 10.14.100(2) (2002). 310 P.3d at 1280, 1288. The woman notified the police of her partner's violent nature and the need for a Korean interpreter. *Id.* at 1280. When the officer served the order, he did not use an interpreter, saw the woman inside the home with her partner, did not ask about her safety, handed the partner the antiharassment order, and left. *Id.* The partner stabbed and killed the woman later that same

day.  *Id.*  In its decision, the court analyzed former Washington Revised Code § 10.14.010 (1987), in which the legislature declared that "the prevention of [personal] harassment is an important government objective" and required municipal officers to serve the order.  *Id.* at 1288.  The court concluded the statute satisfied the requirements of the legislative intent exception to the public duty doctrine because it described a particular class of persons, evidenced a legislative intent to protect that class, and provided a means for achieving that goal.  *Id.*  The court, relying on RESTATEMENT (SECOND) OF TORTS § 302B,[10] also held that the officer owed the woman a common law duty to act reasonably when serving the antiharassment order.  *Id.* at 1289–1290.

To the extent Plaintiff is arguing the legislative intent exception applies, the only statute[11] Plaintiff cites to support his negligence argument is Washington Revised Code § 46.61.264, which requires that upon the immediate approach of an emergency vehicle utilizing its lights and sirens or a police vehicle, "every pedestrian and every personal delivery device shall yield the right-of-way to the authorized emergency vehicle."  (Dkt. No. 65 at 12.)  Subsection (2) states, "This section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway nor from the duty to exercise due care to avoid colliding with any pedestrian or any personal delivery device."  Wash. Rev. Code § 46.61.264(2).  Unlike the statute discussed in *Washburn*, which imposed on police officers a duty to serve antiharassment orders in a nonnegligent manner, § 46.61.264 does not

---

[10] Restatement § 302B provides that "an act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

[11] Plaintiff also cites Washington Revised Code § 46.61.235, which requires vehicles to stop to allow a pedestrian to cross the roadway within an unmarked or marked crosswalk when the pedestrian is upon or within one lane of the half of the roadway.  (Dkt. No. 65 at 12–13.)  Plaintiff does not allege that he was attempting to cross the street when the incident occurred.  (*See generally* Dkt. No. 49 at 113–125.)

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 16

show an intent to protect a specific class of individuals as is required for the legislative intent exception.

Plaintiff further argues that the R&R erred in relying on *Zorchenko* because the case "did not involve the direct malfeasance of the officer in the same way as *Washburn*, *Norg*, [and] *Beltran*." (Dkt. No. 65 at 13.) What Plaintiff fails to recognize is that each of those cases involved an individualized relationship between the plaintiff and the defendant such that courts concluded the defendants owed the plaintiffs a duty. In *Washburn*, the court held that because of legislative intent and the common law duty to guard against danger created by one's own actions, the city owed the woman both a statutory and common law duty to act reasonably in serving the antiharassment order. 310 P.3d at 1291. In *Norg*, the plaintiffs called 911, explicitly requested emergency medical assistance, confirmed their address multiple times, and were repeatedly assured by the dispatcher that medical aid was on the way. 522 P.3d at 587. The court acknowledged the argument that the city established "a direct and particularized relationship" with the plaintiff, and concluded the city owed the plaintiff, individually, a common law duty of reasonable care upon responding to the plaintiff's call for emergency medical assistance. *Id.* at 588–589. As such, the public duty doctrine did not apply in *Norg* and there was no need to consider any of the exceptions. *Id*. at 589. Finally, in *Beltran-Serrano,* a Tacoma Police Department officer shot a mentally ill homeless man after the officer approached him about panhandling in the city. 442 P.3d at 610. When the man, who did not understand English, ran from the officer, she shot him multiple times. *Id.* The court concluded that the common law duty to refrain from causing foreseeable harm in interactions with others applied in the context of law enforcement and "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." *Id.* at 614. The court noted that the plaintiff's claims

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 64) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 65) - 17

arose out of the officer's "direct interactions with him, not the breach of a generalized public duty." *Id.* at 615.  Though the court concluded that the city owed the man a duty to exercise reasonable care, the court acknowledged that "[r]ecognizing such a duty does not open the door to potential liability for a city's statutorily imposed obligation to provide police services, enforce the law, and keep the peace.  These statutory duties have always been, and will continue to be, nonactionable duties owed to the public at large." *Id.*

Here, Officer Phan did not have a direct or affirmative interaction with Plaintiff.  Thus, unlike the police departments in *Washburn*, *Norg*, and *Beltran-Serrano*, Officer Phan had no individual duty to Plaintiff for which he was required to exercise reasonable care.  Plaintiff effectively seeks to impose a broad duty to act, without characterizing it as such.

Accordingly, the Court finds and concludes, just as Judge Peterson did, that Plaintiff's negligence claim against Officer Phan should be DISMISSED on summary judgment.

# V   CONCLUSION

The Court has reviewed Plaintiff's objections (Dkt. No. 65), Judge Peterson's R&R (Dkt. No. 64), Defendants' motion for summary judgment and motion to strike (Dkt. Nos. 48, 59), and the entire record *de novo*. The Court ADOPTS in full Judge Peterson's R&R and ORDERS:

1. Defendants' motion to strike Plaintiff's expert report (Dkt. No. 59) is GRANTED
2. Defendants' motion for summary judgment (Dkt. No. 48) is GRANTED, and the action is DISMISSED with prejudice.

The Clerk is directed to close the case and enter judgment.

Dated this 2nd day of December, 2025.

David G. Estudillo
United States District Judge